Thurman, C. J.
In Ward’s Lessee v. Barrows, 2 Ohio St. 246, this court, speaking of official acts, said: “ The law will presume all to have been rightly done, unless the circumstances of the case •overturn this presumption, and, consequently, as stated by the Supreme Court of the United States, in Bank of the U. S. v. Dandridge, 12 Wheat. 70, acts done which presupposes the existence of other acts to make them legally operative, are presumptive proof of the latter.”
And, again: “ Facts presumed are as effectually established as facts proved, where no presumption is allowed; and hence, in ae- • cordance with this long-established rule of evidence, the court, in Lessee of Winder v. Sterling, 7 Ohio (pt. 2), 190, were entirely justified in saying that the act of the auditor in allowing the credit, .•and making the certificate, which could only be lawfully done after the delinquent list had been verified by the collector, was presumptive proof that the oath had been administered.”
Apply these principles to the facts of this case. “ The lands in controversy lie in township 9, range 11 — civilly, Windsor township, Morgan county — and are a part of that portion of the “ donation tract” which reverted to the United States. As early as 1834, more than sixteen years before the inception of the plaintiff’s title, they were taken possession of by that township, claiming them as its school lands, and have been thus possessed ever since. At the time this possession was taken, they stood designated on the proper book and map in the land office at Marietta, as school lands, and they have ever since remained *so designated. For the omission, accidental no doubt, of this designation in the new tract-book made in 1840, after a change of registers and the removal of the land -office to Chillicothe, can not affect the subsisting designation to which I have referred. In addition to these facts, it is admitted that if these lands were not selected as the school lands of Windsor township, then no selection for that township has ever been made. And it is also to be observed, that they have never been claimed as •school lands by any other township ; nor is there any evidence that .■any other township is without its school lands.
*150 Now it does seem to us, that these facts warrant a presumption, that these lands were properly selected as the school lands of Windsor township. We can not assent to the argument of plaintiff’s-counsel, that it was incumbent on the defendant to show an authenticated copy of the act of selection of the secretary of the treasury. The records and files of the register’s office, coupled with the facts to which I have alluded, made a prima facie case for the-defendant, and threw upon the plaintiff the burden of showing that no selection had been made. If the records at Washington contained no evidence of any such selection, it was for the plaintiff, under the-circumstances, to prove that fact; and although it might not have been conclusive of the controversy, its proper weight would no doubt have been given to it.
It is argued, however, that the presumption of a selection was ■ rebutted by facts that were in proof, and by others of which the court was bound, ex officio, to take notice.
1. “It can not be presumed,” it is said, “that these lands were-selected as school lands for said township 9, range 11, because at the time of the passing of the act appropriating section 16 for the support of schools, and for many years afterward, said township had within its limits original section 16, vacant and undisposed of, and therefore was not entitled to any other school lands.”
The law here referred to, is the act of Congress of April 30, *1802, “to enable the people of the eastern division of the territory northwest of the river Ohio, to form a constitution and state government, and for the admission of such state into the "Union,” etc. 2 Stat. at Large, 173 ; 1 Chase, 72. By this act, certain propositions were made to the constitutional convention, to,.be holden pursuant to the act, which, if accepted by it, were to be binding on the United States. Among these was the following: “ That the section, No. 16, in every township, and where such section has been sold, granted, or disposed of, other lands equivalent thereto, and most contiguous to the same, shall be granted to the inhabitants of such township, for the use of schools.” The convention agreed to accept the propositions, provided certain additions and 'modifications were made by Congress; to which Congress assented by the act of March 3, 1803. 1 Chase, 72-74; 2 Stat. at Large, 225.
But it is not clear that it was designed by this legislation, or compact, to appropriate section 16. specifically, within the bounds of the- *151 •“ donation tract;” for there was no such section within it, nor was it probable there ever would be. That tract had never been surveyed, or otherwise laid out, into sections, nor was there any reason to suppose that it, or any part of it, would be. It had been granted to the trustees of the Ohio Company, pursuant to the act of Congress of April 21, 1792 (1 Stat. at Large, 258; Swan’s Land Laws, 21), for the purpose of being “ conveyed in fee simple, as a bounty, and free of expense, in tracts of one hundred acres, to each male person, not less than eighteen years of age, being an actual settler ^t the •time of such conveyance;” with a proviso, that such part thereof as should not be thus conveyed by the company, within five years from the passing of the act, should revert to the United States. Pursuant to this grant, numerous conveyances of hundred-acre lots were made by the company ; and what part, if any, of the tract remained unconveyed, and had thereby reverted to the United States, was probably wholly unknown to both Congress and the convention in 1802. Now, it *may well be that, under the acts of 1802 and 1803, it was not necessary that a survey, even into townships, should have been made, in order that the title to section 18 should vest in the state; but it does not follow that, in á tract that was not designed to be surveyed into sections, it was intended to .grant to the state what would have been section 16 had the tract been so surveyed.
And when we remember that the whole tract had been granted :by the government to the Ohio Company, and that how much of it had reverted was unascertained, it seems most likely that it was considered as falling within the denomination of “ lands granted or disposed of,” referred to in the act of 1802, and that therefore not ■sections 16, but, in the language of the act, “other lands equivalent thereto,” were intended as the school lands of this tract. And such, I may remark, seems to have been the understanding of Con.gress, when passing the act of March 18, 1818 (3 Stat. at Largo, 409; Swan’s L. L. 24), providing for the sale of the reverted portion of said tract; for, although by that act the right of the state to the usual proportion of school lands is recognized, yet no provision is made for surveying any section 16, but, on the contrary, "the surveyor-general is authorized, in his discretion, to cause the land to be surveyed into hundred-acre lots; a division wholly inconsistent with the existence of a section 16.
Much reliance, however, is placed by plaintiff’s counsel on sec *152 tion 3 of the act of Congress of May 10, 1800 (2 Stat. Large, 73), which required, it is said, a subdivision of the donation tract into sections. But this is a great mistake. That act, as will be seen by its provisions, and especially by its first section, required such lands only to be surveyed, or subdivided, as the previous act of May 18, 1796 (1 Stat. at Large, 464), directed to be sold. Now, certainly, no portion of the donation tract was directed to be sold by the act of 1796, for when that act was passed, no portion of the tract had reverted to the United States, nor could it be known that there would be any reverter. Besides, ^section 2 excludes lands previously patented, and therefore excludes the “donation tract.”
But whether the act of 1800 is, or is not, more comprehensive than that of 1796, it is very evident that the lands referred to in section 3 are the same directed to be sold by section 4; and, as it would be unreasonable to suppose that the reverted lands iu the donation tract were thus ordered to be sold without any step being taken to ascertain their site, description, or quantity, the position of counsel, that they were directed to be surveyed, can not be maintained.
2. “It can not be presumed,” it is argued, “that the secretary of the treasury selected the lands marked ‘ school,’ ‘ do,’ and ‘ school lands,’ on said tract-book, as school lands for said township 9, range 11, under said act of May 20, 1826, because the quantity is greater by one hundred and sixty-one acres and fifty-nine hundredths, than the law authorized him to select for that township, even if it be admitted that said township was entitled to have school lands selected under said act. Said lots numbered 7, 8, 9, 10, 11, 34, and 59, marked ‘ school,’ etc., as will be seen by the plat, all lie adjoining each other in a compact form, and contain six hundred and forty-one acres and fifty-nine hundredths of an acre. It is admitted that said township 9, range 11, contains less than three-fourths of an entire township, and consequently, under said act of May 20,1826; could only have three-fourths of a section, or four hundred and. eighty acres, selected and appropriated as school lands.”
To this point it might be replied that, under the circumstances, it would be more reasonable to presume a mistake in the quantity selected, than to believe that no selection at all was made.
But were it admitted that no selection was made under the act of 1826, that would not decide the case, for the selection may have .and probably did take place before the passage of that act. There *153, 154 was ample authority under the acts of 1803 and 1818 to make it,, and no reason is perceived why it may not have been made. It is true, that counsel say that the selections under the *act of’ 1803 were to be made out of the “ reserved sections,” so called, viz., the lour sections at the center of the township; but it is to be remembered that there were no such sections, existing or contemplated, in the “ donation tract; ” that, by subsequent acts of Congress, these “reserved sections ” were directed to be sold; and, finally, that the act of 1818 clearly had no reference to them.
It may be supposed, however, that the argument founded on said, supposed excess of quantity, is as strong against a presumption of a selection before the act of 1826, as of a selection under that act. Hut this is not so. Windsor township is fractional, containing more than one-half, but less than three-fourths of a full township. school lands were selected for it under the act of 1826, in compliance with the terms of that act, and without error, the amount selected would be 480 acres. But under the compact between the general government and the state, the township was entitled to a full section, and no act of Congress prior to that of 1826 had attempted to infringe this right, nor was that act designed to infringe it. Being thus entitled to a full section, if the selection was made before the act of 1826, the evident presumption is that that quantity was selected ; and even if the selection was made under that act, it would not be unreasonable to suppose that the right of the township was respected.
Thattheright existed may bo made quite manifest. The proposition hereinbefore quoted from the act of 1802, and which finally became matter of compact between the general government and the state, was, “thatthe section number sixteen, in every township, and where such section has been sold, granted, or disposed of, other lands equivalent thereto, and most contiguous to the same, shall be granted to the inhabitants of such township, for the use of schools.” Here no distinction whatever is made between entire and fractional townships. “Every township,” fractional or entire, containing a section 16, is entitled to*it, if undisposed of; if disposed of, then to its equivalent. The language is too clear to admit of doubt; but if a doubt could be raised, it would be removed by a reference to the ordinance of May 20, 1785, and July 23, 1787, by the first of which it was ordained that, “ There shall be reserved the lot No. 16 of every township, for the maintenance of public schools within said. *155 township;” and further, that “when any township or fractional part of a township ” shall be sold, the deed to the purchaser shall except and reserve “the lot No. 16, for the maintenance of public schools;” and in the second of which ordinances is the following provision: “The lot No. 16, in each township or fractional part of a-township, to be given perpetually for the purposes contained in the said ordinance,” viz., the above ordinance of 1785. U. S. Land L., Senate Compilation, vol. 1, pp. 13, 14, 24, 25.
These provisions show very clearly the policy of the government from the beginning, and render it quite certain that the comprehensive language of the act of 1802 was designed to embrace fractional as well as entire townships; and that each was to have the section 16 within its bounds, or its equivalent, is further shown by the fact that no attempt at an apportionment was made, as would surely have been done had it been designed to give the fractional townships less than full sections. Had there have been such a design, it would have been carried out by a provision declaring what proportion of a section a fractional township should have. But there is no such provision in any act we have met with, prior to that of 1826, except so far as such a provision may in effect be contained in the grant, by the act of 1803, of “one thirty-sixth part of all the lands of the United States lying in' the State of Ohio to which the Indian title has not been extinguished, which may hereafter be purchased of the Indian tribes by the United States, which thirty-sixth part shall consist of section 16 in each township, if the said land shall be surveyed in townships of six miles square, and *shall,'if the lands be surveyed in a different manner, be designated by lots.” 2 Stat. at Large, 226; 1 Chase 73. Now, taking into consideration the circumstances under which this grant was made, and especially the legislation already referred to, as well as the language employed, it is by no means clear that it was designed by it to give to a fractional township less than a full section, thereby departing from the previous policy of the government— from the policy of the act of 1802, to which the act of 1803 was supplementary — and making a difference between different portions of the country without any reason for so doing. But whether such was or was not the intention, is immaterial in this case; for this grant of the act of 1803 relates only to lands to which the Indian title was not then extinguished, and consequently had no reference to the “ donation tract,” the Indian title to which had long before *156 been acquired. It came under the before-quoted provision of the act of 1802. -
Finally, it is argued by counsel, that the fact of the premises in question being- designated as school lands, on the register’s book and map, is explained by the letter of the secretary of the treasury of July 13, 1805, and that they were so designated in consequence of statements contained in that letter. See United States Land Laws, Senate Compilation, vol. 2, p. 260.
But this seems to us highly improbable. For, first, the letter contains no instructions to the register to make any entry in his books. Secondly, the designation is upon the “tract-book,” which is the book by reference to which sales are made. Of course, a tract-book of the reverted lands in the donation tract must have been made after the survey of those lands into lots, preparatory to their sale. But this survey was made by Francis, in 1818, under the provisions of the act of that year, so that the tract-book in question, or at least so much of it as relates to these reverted lands, had no existence in 1805. It was doubtless made in 1818 or 1819.
Again, the designation on the tract-book is by lots, as surveyed *and numbered by Francis, as above mentioned. This is apparent from a comparison of the book with his field-notes and map. The book was obviously made from the field-notes and map; and it is hardly necessary to repeat that the latter were made in 1818. Thirdly, that the secretary, in 1805, contemplated selecting tho premises in question as school lands for township No. 5, range 10, is apparent from his letter; but that the selection was not finally made is reasonably certain. There is no evidence of it on the plat referred to in his letter; the lands were never claimed by that township; other lands were set off to it in 1819, of which it took and has ever since held possession; no allusion to any such selection is made in the act of 1818; in the survey made by Francis, under the direction of the surveyor-general, no respect was had to it, but, on the contrary, the premises were divided into lots; and, finally, "Windsor township has held the premises ever since 1834, without any question of its right, save that now made by the plaintiff.
Upon the whole, we are of opinion that the motion for a new trial should be overruled, and judgment be entered for the defendant.